```
              IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF HAWAII

ALEX HO,                        )    CIVIL NO. 19-00221 SOM/WRP
                                )
          Plaintiff,            )    ORDER GRANTING IN PART AND
                                )    DENYING IN PART MOTION TO
     vs.                        )    SEAL EXHIBIT K; ORDER DENYING
                                )    MOTION FOR SUMMARY JUDGMENT
BLUE MOUNTAIN MECHANICAL,       )
INC., a foreign profit          )
corporation, et al.,            )
                                )
          Defendants.           )
_____ )
```

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
SEAL EXHIBIT K; ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION.**

Plaintiff Alex Ho was a sheet metal worker for Defendant Blue Mountain Mechanical, Inc.  Ho says he was sexually harassed by another Blue Mountain employee, Virgil Gozum.  According to Ho, when he complained about the sexual harassment to Craig Sandera, his supervisor, Sandera not only allowed the harassment to continue, he made things up to get Ho fired.  Ho believes that Sandera was retaliating against him because Ho reported the harassment and because Sandera incorrectly thought Ho had been having an affair with Sandera's girlfriend.  Sandera also allegedly forced Ho to allow Sandera to examine Ho's phone to prove the lack of that relationship.

On April 26, 2019, Blue Mountain removed the Complaint Ho had filed in state court.  *See* ECF No. 1.  That Complaint includes five counts.  Count I asserts that Ho was sexually

harassed in violation of section 378-2 of Hawaii Revised Statutes. Specifically, Ho alleges that he was subjected to a hostile work environment and that Blue Mountain failed to take remedial actions to stop the sexual harassment. Count II asserts that Blue Mountain is liable for the assaults and batteries Ho says he suffered at Gozum's hands. Count III asserts that Blue Mountain invaded Ho's privacy when Sandera forced Ho to show Sandera his cellular phone. Count IV asserts that Blue Mountain violated Hawaii's Whistleblower's Protection Act, section 378-61 of Hawaii Revised Statutes, by terminating Ho for complaining about Sandera's conduct. Count V asserts that Blue Mountain intentionally inflicted emotional distress on Ho.

Blue Mountain seeks summary judgment on all claims, arguing that Ho was not terminated, and that Ho instead left Blue Mountain's employment on his own. Because a question of fact exists as to whether Ho was terminated, the motion is denied.

**II.    BACKGROUND.**

Blue Mountain is a mechanical contractor based in Olympia, Washington. *See* Decl. of Steve Watson ¶¶ 1, 5, ECF No. 30-1, PageID #s 150-51. Blue Mountain provides plumbing and sheet metal work with respect to various federal construction projects in Hawaii. *Id.* ¶ 5. In Hawaii, Blue Mountain works with Hawaii Sheetmetal Workers, Local 293, which supplies labor on an as-needed basis. *Id.* ¶ 6.

Ho began working for Blue Mountain as a journeyman in 2014 on a Blue Mountain project at Tripler Army Medical Center. *See* i*d.* ¶ 7; Ho Decl. ¶ 5, ECF No. 42-1, PageID # 270. Steve Watson, Blue Mountain's president and co-owner, says that Ho's work for Blue Mountain was not continuous and that his hours were not guaranteed. Instead, Ho's work depended on what projects Blue Mountain had. *See* Watson Decl. ¶ 7, PageID # 151.

Ho says that, while he was working on a Tripler project in 2015, Virgil Gozum poked him in the rectum and buttocks while he was on a ladder, nearly causing him to fall. *See* Ho Decl. ¶ 11, PageID # 271. Ho says that he repeatedly asked Gozum to stop, but Gozum continued to poke him. *Id.* ¶ 12. Ho says that, in 2017, Gozum used a hammer, stick, and other items to poke Ho in the rectum. *Id.* ¶ 15. Ho says he was poked by Gozum in the rectum one to two times per week from February 2017 through December 2017. *Id.* ¶ 18. Ho says that Gozum also pinched his nipples and poked his penis. *Id.*

Ho says that, in November 2017, he reported Gozum's conduct to Sandera, Ho's supervisor at Blue Mountain. *Id.* ¶ 20. Sandera allegedly "laughed and took no action." *Id.* Ho says that he continued to complain about Gozum to Sandera on multiple occasions, but that Blue Mountain continued to take no action. *Id.* ¶ 22.

3

While Ho says that Gozum is physically smaller than he is, he allegedly felt he could not defend himself against Gozum because doing so might have gotten Ho fired. *Id.* ¶ 25, PageID # 273.

According to Ho, Sandera incorrectly believed Ho was having an affair with Sandera's girlfriend. *Id.* ¶ 28. Ho suspects that this caused Sandera to take no action with respect to Ho's sexual assault complaints and to make up allegations about Ho's absenteeism for the purpose of getting Ho fired. *Id.* ¶¶ 26-28. Ho says that Sandera made weekly accusations against Ho about the suspected affair from August 2017 through March 2018. *Id.* ¶¶ 31-32. Ho says that, on multiple occasions, Sandera forced him to let Sandera look at Ho's cellular telephone to see whether Ho was messaging Sandera's girlfriend. *Id.* ¶ 35. Ho says that Sandera often called him at night to accuse him of having the affair. *Id.* ¶ 38.

On March 20, 2018, Ho received a "Notice of Termination and Evaluation Form," indicating that Watson had terminated Ho for absenteeism. The notice stated, "Won't return phone calls." *See* ECF No. 42-2, PageID # 282.

On March 23, 2018, Ho called Watson. *See* Ex. K; Watson Decl. ¶ 9, PageID # 153. The Complaint mistakenly identifies the date of this call as July 3, 2018. *See* Complaint ¶ 34, ECF No. 1-1, PageID # 10. The Complaint, signed by Ho's attorney,

4

contains no verification by Ho.  This court is not persuaded by
Blue Mountain's argument that the mistaken date in the Complaint
is a judicial admission that Ho should be prohibited from
correcting.  The court denies Blue Mountain's request that Ho's
Opposition and declaration be stricken in light of this mistake,
as well as Blue Mountain's requests that Ho be forced to file an
Amended Complaint with the correct date and that Blue Mountain be
awarded fees.  *See* ECF No. 44, PageID # 308.  Paragraph 9 of
Watson's Declaration clearly indicates that, at the time Blue
Mountain filed the present summary judgment motion, it had no
confusion about the dates of actual events in issue, including
the date that Watson and Ho discussed the termination notice sent
to Ho.  The allegations in the Complaint about the substance of
that discussion track the factual allegations in Watson's
declaration.  *Compare* Complaint ¶¶ 34-44, ECF No. 1-1, PageID #s
10-11, *with* Watson Decl. ¶ 9, ECF No. 30-1, PageID #s 153-54
(identifying the date of the call as March 23, 2018, not July 3,
2018).  Blue Mountain shows no prejudice from the mistaken date
in the Complaint and has all along known the correct date.

In any event, during the conversation on March 23,
2018, Ho allegedly argued to Watson that Ho should not be fired
because Sandera had not actually instructed Ho to report for work
on the day of alleged absenteeism, having only communicated the
accusation that Ho was having an affair with Sandera's

girlfriend. Watson says he agreed that Ho should not be fired because of any such relationship and told Ho that Watson would look into it and get back to Ho. *See* Ex. K; Watson Decl. ¶ 9, PageID # 153. Ho says that Watson never got back to him with respect to any further work. *See* Ho Decl. ¶ 66, PageID # 277. Ho says that he did not receive any formal documentation indicating that he had actually been rehired, and that he never actually got further work at Blue Mountain. *Id.* ¶¶ 81, 82, 84.

At most, on March 26, 2018, Watson, having spoken with Sandera, sent a text message to Ho stating, "Alex I am going to bring you back. Trying to see what we have coming up. Will let you know." Later that day, Ho responded, "Thanks." Watson Decl. ¶ 10, PageID # 154; ECF No. 30-8, PageID #s 195-96 (copy of text messages). At that time, Watson thought he could bring Ho back to work on a Tripler project starting in June 2018. Watson Decl. ¶ 10, PageID # 155. However, in April 2018, the start date of that project was pushed back to be between August and September 2018. *Id.* ¶ 11. Nothing in the record indicates that Watson identified that Tripler project or any other specific project to Ho.

On July 27, 2018, Ho sent Watson a text message stating, "can I have someone drop off my gang box of tools.. I need it ASAP.. Lmk, thanks.." Watson responded, "Yes I will have Leonard call you to arrange." ECF No. 30-10, PageID #s 200-

6

01.  Ho's retrieval of his tools led Watson to think that Ho was leaving Blue Mountain to work another job.  *See* Watson Decl. ¶ 13, PageID # 156.

### III. THE MOTION TO SEAL EXHIBIT K IS GRANTED IN PART AND DENIED IN PART.

Before turning to the merits of Blue Mountain's Motion for Summary judgment, the court examines Blue Mountain's Motion for Leave to File Under Seal Certain Exhibit.  That motion is granted in part and denied in part.  The court concludes that sealing only a portion of Exhibit K will satisfy the "compelling reasons" test, maintaining the confidentiality of information irrelevant to the present motion, while allowing the public access to pertinent information.  *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006).

Under Local Rule 5.2(a), "Any party may move to file under seal any pleading, declaration, affidavit, document, picture, exhibit, or other matter if it contains confidential, classified, restricted, or graphic information or images."  Here, the court allows Blue Mountain to file only part of Exhibit K under seal.  Exhibit K is a videotaped recording of the conversation of March 23, 2018, between Ho and Watson.  While Ho recorded the conversation using the video capabilities of his phone, the video itself is of a wall or a roof and is irrelevant to the substance of the conversation.  Exhibit K also contains an unofficial transcript of the recording prepared by counsel for

7

Blue Mountain. This unofficial transcript is generally correct. For ease of reference, this court refers to the unofficial transcript, but orders Blue Mountain to publicly file a redacted version of the unofficial transcript no later than April 20, 2020, and to publicly file a redacted version of the recording by June 1, 2020.

Part of the conversation pertains to the conduct of another Blue Mountain employee who is not a party to this action. That portion contains confidential personnel information irrelevant to the present motion. For that reason, that information may be redacted from both the recording and the unofficial transcript of Exhibit K. Specifically, Blue Mountain shall redact from Exhibit K: 1) all of Page 3 (BMM - Ho 0767), 2) Page 4 (BMM - Ho 0768) beginning with "And when" in the fourth line (this means line 1 from "S: I don't really" through line 4 "for my job" shall be filed publicly), and 3) Page 5 (BMM - Ho 0769) from line 4 after "S: I'm having to deal with it" to before "A: Right, but the thing about it was."

Most of the remaining parts of Exhibit K have already been disclosed in the filings with respect to the present motion. Whether Ho may have violated Washington law in recording the conversation is not relevant to whether Exhibit K should be sealed, as the parties have already discussed that conversation at length and Ho has filed a declaration indicating that he

recorded the conversation.  *See* Decl. of Alex Ho ¶¶ 44-46, ECF No. 42-1, PageID # 275.

**IV.      SUMMARY JUDGMENT STANDARD.**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position concerning whether a material fact is genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  *See id.* at 323.  A moving party without the

ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv.*, 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)); *see also Addisu*, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of

10

material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). *Accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.* When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Id.*

**V.     ANALYSIS.**

Blue Mountain argues that "Ho was *not* terminated." ECF No. 29-1, PageID # 131. Instead, Blue Mountain says, "The undisputed evidence is that Ho left [Blue Mountain] on his own." *Id.* That argument is unpersuasive. While most of Ho's

11

Opposition is irrelevant to the issue before this court, it raises a question of fact as to whether Ho was terminated by Blue Mountain. That factual question defeats the present motion for summary judgment.

Before examining whether Ho was terminated, the court turns to Blue Mountain's contention that it is implausible that Gozum sexually assaulted Ho because Ho is a body builder who is much bigger than Gozum. This argument may be made to a trier of fact, but it is not persuasive on the present record. Even if Ho could have physically defended himself from the alleged assaults, that does not necessarily mean that the assaults did not happen. There are many reasons besides size that go to whether a person might or might not physically resist a sexual assault or harassment. In this case, Ho says he feared that defending himself might get him fired. *See* Ho Decl. ¶ 25, PageID # 273. Instead of resorting to physical action, Ho says he reported Gozum's conduct to Sandera, Ho's supervisor at Blue Mountain, but that Sandera took no corrective action. *Id.* ¶ 20. Blue Mountain argues in its Reply that it investigated Ho's claims and found no credible evidence of the alleged assaults, *see* ECF No. 44, PageID # 309, but Ho's declaration raises a question of fact as to whether the assaults occurred. The plausibility of the assaults is best left to the trier of fact to decide.

The court does not address Blue Mountain's pretext argument or reach the merits of the Whistleblower's Protection Act claim, arguments raised for the first time in the Reply brief. *See* Local Rule 7.2 ("Any argument raised for the first time in the reply shall be disregarded.").

Blue Mountain also mentions that, during the phone conversation of March 23, 2018, Ho made no mention of any sexual harassment to Watson. That is not dispositive of any claim at issue, as Ho says he had already told his supervisor, Sandera, about the alleged harassment. Blue Mountain points to nothing in the record indicating that a Blue Mountain employee reporting harassment had to report it to Watson, rather than just to the employee's supervisor. At most, the Labor and Management Agreement submitted by Blue Mountain says, "All employees who have been subjected to sexual harassment **MUST report each incident to the employer, the firm's superintendent, or an employee designated by the employer**." ECF No. 30-6, PageID # 183.

Turning to the merits of the motion, the court notes that there is no dispute that Blue Mountain sent Ho a termination notice on March 20, 2018. Nor is there a dispute that Ho called Watson, the president and co-owner of Blue Mountain, on March 23, 2018, and that Watson told Ho during that conversation that Ho could not be terminated because of any supposed affair. There is

also no dispute that, on March 26, 2018, Watson sent Ho a text message stating, "Alex I am going to bring you back. Trying to see what we have coming up. Will let you know." But none of this evidence establishes that Ho was actually returned to Blue Mountain's employment. Nothing in the record indicates that Blue Mountain ever told Ho that he was supposed to report to work on a specific job at a specific time. At most, Watson says that, in March 2018, Watson intended to have Ho work on an upcoming project at Tripler beginning in June 2018. Nothing in the record indicates that Ho was ever told that. To the contrary, Ho says Watson never got back to him. *See* Ho Decl. ¶ 66, PageID # 277. Nor did Ho receive anything more than Watson's text message saying that Watson was "going to bring you back" and that Watson would "let you know" what was "coming up." *Id.* ¶ 81. Ho says that he was never actually brought back to work at Blue Mountain. *Id.* ¶¶ 82, 84.

Against this backdrop, this court concludes that there is a question of fact as to whether Ho voluntarily left Blue Mountain's employment on July 27, 2018, when Ho sent Watson a text message stating, "can I have someone drop off my gang box of tools.. I need it ASAP.. Lmk, thanks.." By that time, four months had passed since Watson told Ho he would see what work he had coming up for Ho and would get back to Ho. It is not clear

14

that Blue Mountain had truly reinstated Ho after Ho and Watson spoke in March 2018.

**VI.    CONCLUSION.**

The court grants in part and denies in part Blue Mountain's motion to file Exhibit K under seal and denies its motion for summary judgment.  Blue Mountain is directed to publicly file a redacted version of the unofficial transcript of the conversation of March 23, 2018, no later than April 20, 2020, and to publicly file a redacted version of the recording of that conversation by June 1, 2020.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 14, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Ho v. Blue Mountain Mech.,* Inc., Civ. No. 19-00221 SOM/WRP; ORDER GRANTING IN PART AND DENYING IN PART MOTION TO SEAL EXHIBIT K; ORDER DENYING MOTION FOR SUMMARY JUDGMENT